```
                 UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
_____
                                   )
MOSTAFA GHANNAD-REZAIE,             )
                                   )
               Plaintiff,           )
                                   )
v.                                  )    Civil Action
                                   )    No. 24-cv-11665-PBS
CHIP LAITINEN, Deputy Chief of      )
Mission, U.S. Embassy in Armenia    )
in his official capacity; ANTHONY   )
BLINKEN, Secretary of the U.S.      )
Department of State in his          )
official capacity,                  )
                                   )
               Defendants.          )
_____)
```

## MEMORANDUM AND ORDER

November 21, 2024

Saris, D.J.

### INTRODUCTION

Plaintiff Mostafa Ghannad-Rezaie brings this petition for a writ of mandamus to compel the Department of State ("DOS") to act on the immigrant visa applications of his parents who are citizens of Iran. The applications have been in administrative processing for security screening since a consular officer issued refusals following interviews in September 2023. Alleging that the DOS has unreasonably delayed in administrative processing, Ghannad-Rezaie seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361, and the Due Process Clause of the Fifth Amendment. The DOS

1

moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

After hearing, the Court **ALLOWS** the DOS's motion to dismiss (Dkt. 9).

## BACKGROUND

### I. Statutory and Regulatory Background

This case concerns the family-based immigration process under the Immigration and Nationality Act ("INA"). A noncitizen must have a visa to be admitted to the United States as an immigrant. See 8 U.S.C. §§ 1181(a), 1182(a)(7)(A). A U.S. citizen can petition U.S. Citizenship and Immigration Services ("USCIS") to classify certain noncitizen family members as qualifying relatives eligible for a visa. Id. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a). If USCIS approves the petition, the noncitizen family member then applies for an immigrant visa at the appropriate DOS consular office. See 8 U.S.C. § 1202(a); 22 C.F.R. § 42.61(a). The noncitizen submits written materials and interviews with a consular office abroad. See 8 U.S.C. § 1202; 22 C.F.R. § 42.62.

The authority to grant a visa rests exclusively with the consular officer. See 8 U.S.C. § 1201(a)(1)(A); 22 C.F.R. § 42.71(a). Under INA § 221(g), the officer shall not issue a visa if he or she knows or has reason to believe that the noncitizen is ineligible to receive the visa. See 8 U.S.C. § 1201(g). After the noncitizen completes the application and an interview, the

2

consular officer generally must either "issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a). An officer who refuses a visa must inform the applicant of the legal grounds for the refusal and "of any statutory provision of law or implementing regulation under which administrative relief is available." Id. § 42.81(b). A noncitizen denied a visa via consular processing is entitled to a citation to the statute under which the consular officer decided to exclude him. See 8 U.S.C. § 1182(b)(1). If a consular officer denies the visa on certain national security or criminal grounds, then the noncitizen is not entitled to any explanation. See id. § 1182(b)(3).

The consular officer "may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change" and may "place an officially refused application in administrative processing." Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam). A refusal under INA § 221(g) may be "overcome . . . when additional evidence is presented, or administrative processing is completed." 9 U.S. Dep't of State, Foreign Affairs Manual § 306.2-2(A)(a) (2024) ("FAM"). If "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). When the applicant presents additional evidence or the consular officer decides that

3

administrative processing is complete, the officer "re-open[s] and re-adjudicate[s] the case" and "determin[es] whether the applicant is eligible for a visa." 9 FAM § 306.2-2(A)(a)(1). The DOS's official guidance treats a refusal under INA § 221(g) as, "legally, a refusal on a visa application, even if that refusal is eventually overcome." Id. § 302.1-8(B)(c).

## II.  Factual Background

The complaint alleges the following facts, which at this stage the Court accepts as true. See Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 5 (1st Cir. 2011). In January 2021, Ghannad-Rezaie, a U.S. citizen, petitioned USCIS to classify his Iranian citizen parents as qualifying relatives. After USCIS approved the petitions in November 2021, both parents filed visa applications with the U.S. Embassy in Armenia. On September 25, 2023, a consular officer interviewed the parents, refused their applications under INA § 221(g), and placed the applications into administrative processing.

4

**LEGAL STANDARD**[1]

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555; see Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007). The plausibility standard requires a court to proceed in two steps. First, the court must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The court must then determine whether the factual allegations permit it "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

---

[1] The government challenges the Court's jurisdiction under Rule 12(b)(1) but does not develop the argument. The MVA vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. And the Supreme Court recently clarified that "the doctrine of consular nonreviewability is not jurisdictional." Dep't of State v. Muñoz, 602 U.S. 899, 908 n.4 (2024).

## DISCUSSION

The DOS argues that dismissal of the complaint is warranted for three reasons: 1) the Court cannot review Ghannad-Rezaie's claims under the doctrine of consular nonreviewability; 2) the DOS has already met its obligation under the APA by refusing the visas; and 3) the alleged delay is not unreasonable.

### I.  Doctrine of Consular Nonreviewability

The DOS first contends that the doctrine of consular nonreviewability precludes judicial review of Ghannad-Rezaie's claims. The Supreme Court has held that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" Dep't of State v. Muñoz, 602 U.S. 899, 907 (2024) (quoting Trump v. Hawaii, 585 U.S. 667, 702 (2018)). The INA "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." Id. at 908. "This principle is known as the doctrine of consular nonreviewability." Id. Ghannad-Rezaie does not, however, challenge the consular officer's decision to refuse his parents' visa applications. Rather, he alleges that the DOS must re-adjudicate the applications following administrative processing and has unreasonably delayed doing so.

The parties dispute whether the doctrine of consular nonreviewability applies to unreasonable delay claims that seek to

6

compel the DOS to adjudicate a visa application during administrative processing. The First Circuit has not answered this question, and courts are split on the issue. Many courts have concluded that the doctrine does not preclude review of claims seeking to compel the DOS to adjudicate a visa application. See, e.g., Patel v. Reno, 134 F.3d 929, 931–32 (9th Cir. 1997); Dy v. Blinken, 703 F. Supp. 3d 314, 317 (D. Mass. 2023); Raouf v. U.S. Dep't of State, 702 F. Supp. 3d 19, 30 (D.N.H. 2023); Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 11 (D.D.C. 2022). Others have come to the opposite conclusion. See, e.g., Khan v. U.S. Dep't of State, 722 F. Supp. 3d 92, 98 (D. Conn. 2024); Abdo v. Tillerson, No. 17 CIV. 7519 (PGG), 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019); Saleh v. Holder, 84 F. Supp. 3d 135, 139 (E.D.N.Y. 2014).

The Court holds that the doctrine of consular nonreviewability does not preclude claims to compel the DOS to adjudicate a visa application when it has a nondiscretionary duty to do so because a claim of unreasonable delay does not seek judicial review of a consular decision to deny a visa.

## II.  APA and Mandamus Claims (Counts I and II)

### A.  Duty to Act on the Visa Applications

The DOS argues that it has already satisfied any duty to act by refusing to issue the parents' visas following their interviews and that any further action it may take on their applications is

7

discretionary. The APA requires a government agency to "within a reasonable time . . . conclude a matter presented to it," 5 U.S.C. § 555(b), and empowers courts to "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). A plaintiff advancing an unreasonable delay claim under the APA must show that the agency "failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004); see Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv., 674 F.3d 97, 99 (1st Cir. 2012).

District courts within this circuit have "generally found a 'nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'" Conley v. U.S. Dep't of State, __ F. Supp. 3d __, __ (D. Mass. 2024) [2024 WL 1640074, at *3] (quoting Pishdadiyan v. Clinton, No. 11-10723-JLT, 2012 WL 664774, at *11 (D. Mass. Feb. 7, 2012)).

The question here is whether the DOS has a nondiscretionary duty to act within a reasonable period of time after it issues a refusal under INA § 221(g) but then places the visa application into "administrative processing." 22 C.F.R. § 42.81(e) states that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e) (emphasis added). "Unlike the word 'may,' which implies discretion, the word

8

'shall' usually connotes a requirement." Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 171 (2016). Accordingly, most courts that have confronted this regulation have construed it to create a mandatory duty on the part of the consular officer to reconsider the refusal of a visa application when the applicant presents new evidence tending to overcome the basis for the refusal. See, e.g., Rivas v. Napolitano, 714 F.3d 1108, 1111 (9th Cir. 2013); Cepeda v. U.S. Citizenship & Immigr. Servs., 624 F. App'x 52, 53 (2d Cir. 2015) (summary order); Sheikhalizadehjahed v. Gaudiosi, No. 2:24-cv-1136 SCR, 2024 WL 4505648, at *8 (E.D. Cal. Oct. 16, 2024). But see Ramizi v. Blinken, __ F. Supp. 3d __, __ (E.D.N.C. 2024) [2024 WL 3875041, at *11] ("[A] consular officer's duty to reconsider a refused application under Section 42.81(e) is discretionary . . . ."), appeal filed, No. 24-2008 (4th Cir. Oct. 11, 2024).

I agree with the interpretation of the regulation that the agency has a nondiscretionary duty to reconsider the refusal when the applicant presents new evidence to overcome the basis for refusal. The doctrine of consular nonreviewability, however, bars the court from reviewing the final adjudication after administrative processing is complete.

Both parties have submitted evidence outside the four corners of the complaint and have not disputed the information or objected to its consideration. In Ghannad-Rezaie's opposition to the DOS's

9

motion to dismiss, he alleges that each of his parents received a post-interview email asking them to complete a detailed biographical questionnaire "[t]o continue further consideration of [their] case[s]," which they returned days later. Dkt. 11 at 3. The submission of detailed biographical information triggered § 42.81(e)'s requirement for the consular officer to reconsider the visa applications. In response to an inquiry by Senator Warren's office, the U.S. Embassy stated on January 3, 2024, that administrative processing is "currently ongoing and can take a significant amount of time to be completed." Dkt. 11-1 at 2. The government submitted an affidavit dated September 6, 2024, stating that the "consular officer determined that additional security screening was required for both applications" and that "additional security screening is ongoing." Dkt. 10-1 ¶¶ 4-5. Thus, the government does not dispute that it is reconsidering the visa application and has not finished administrative processing.

The Court therefore holds that Ghannad-Rezaie has adequately alleged that, under the plain terms of the regulation, the DOS owes a nondiscretionary duty to reconsider his parents' visa applications following administrative processing and is doing so.

### B. Reasonableness of Delay

The DOS's final argument is that Ghannad-Rezaie has not plausibly alleged that the DOS has unreasonably delayed in reconsidering the decision on the applications. The First Circuit

10

has employed the six-factor test laid out in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), to assess a claim of agency delay. See Towns of Wellesley, Concord & Norwood v. FERC, 829 F.2d 275, 277 (1st Cir. 1987) (per curiam); cf. Novack v. Miller, __ F. Supp. 3d __, __ (D. Mass. 2024) [2024 WL 1346430, at *5-6] (applying the TRAC factors to a claim alleging an unreasonable delay in adjudicating an application for a waiver of inadmissibility); V.U.C. v. U.S. Citizenship & Immigr. Servs., 557 F. Supp. 3d 218, 223 (D. Mass. 2021) (same to a delayed visa claim). The TRAC factors provide that:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

TRAC, 750 F.2d at 80 (cleaned up).

As a threshold matter, Ghannad-Rezaie contends that the Court cannot apply the TRAC factors at the motion-to-dismiss stage. Although Ghannad-Rezaie is correct that a claim of unreasonable delay is a fact-intensive inquiry that "sits uncomfortably at

[this] stage," Gonzalez v. Cuccinelli, 985 F.3d 357, 375 (4th Cir. 2021), he still must plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The Court therefore applies the TRAC factors to determine whether the complaint (together with the undisputed facts) plausibly alleges an unreasonable delay in reconsidering Ghannad-Rezaie's parents' visa applications after administrative processing. Compare Celebi v. Mayorkas, __ F. Supp. 3d __, __ (D. Mass. 2024) [2024 WL 3744654, at *3-5] (dismissing for failure to state a plausible claim of unreasonable delay under the TRAC factors in the immigration context), Novack, __ F. Supp. 3d at __ [2024 WL 1346430, at *5-6] (same), with Raouf, 702 F. Supp. 3d at 33 (holding that a plaintiff's allegations sufficed to state a plausible claim of unreasonable delay under the TRAC factors at the motion-to-dismiss stage).

Ghannad-Rezaie points to statutory provisions that, in his view, reveal Congress's preferred timeline for processing visa applications. See 8 U.S.C. § 1571(b) (expressing "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application"); Consolidated Appropriations Act of 2000, § 237(a), Pub. L. No. 106-113, 113 Stat. 1501, 1501A-430 (1999) (codified at 8 U.S.C. § 1201 note) ("It shall be the policy

of the [DOS] to process immigrant visa applications of immediate relatives of United States citizens . . . within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service."). Both provisions, however, represent congressional aspirations -- not statutory deadlines -- and thus merit only some weight in the TRAC analysis. See Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 344 (D.C. Cir. 2023) (§ 1571(b)); Barrios Garcia v. U.S. Dep't of Homeland Sec., 25 F.4th 430, 454 (6th Cir. 2022) (§ 1571(b)); Parva v. Blinken, No. TDC-23-3287, 2024 WL 4042466, at *6 (D. Md. Sept. 4, 2024) (Consolidated Appropriations Act); Milligan v. Pompeo, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (Consolidated Appropriations Act). When the DOS fails to meet Congress's non-mandated expectations, a court must still ask whether "the delay has . . . reached the level of disproportionality . . . previously held sufficient to grant relief." Da Costa, 80 F.4th at 344; see Mohammad v. Blinken, 548 F. Supp. 3d 159, 167 (D.D.C. 2021) (reasoning that giving dispositive weight to § 1571(b)'s 180-day window "would ignore the overwhelming caselaw rejecting unreasonable delay challenges for applications that remained pending well beyond" that point).

In this case, about nine months elapsed between the time Ghannad-Rezaie's parents provided the biographical information and the filing of this complaint, and administrative processing has

continued for the five months that this lawsuit has been pending. The government explains that the delay is necessary for security screening, a decision that falls squarely within its discretion. Courts have held at this stage that delays of similar length following a refusal under INA § 221(g) do not support a plausible claim for relief. See Yaghoubnezhad v. Stufft, __ F. Supp. 3d __, __ (D.D.C. 2024) [2024 WL 2077551, at *12] (twenty-two months); Ebrahimi v. Blinken, __ F. Supp. 3d __, __ (N.D. Ill. 2024) [2024 WL 2020038, at *11] (twelve months); Infracost Inc. v. Blinken, __ F. Supp. 3d __, __ (S.D. Cal. 2024) [2024 WL 1914368, at *8] (fourteen months); Babaei v. U.S. Dep't of State, __ F. Supp. 3d __, __ (D.D.C. 2024) [2024 WL 1178453, at *31] (almost eighteen months); Sharifi v. Blinken, __ F. Supp. 3d __, __ (E.D.N.Y. 2024) [2024 WL 1798185, at *4] (fourteen months); Giliana v. Blinken, 596 F. Supp. 3d 13, 21 (D.D.C. 2022) (fifteen months).

Regarding the competing interests at play (TRAC factors three and five), Ghannad-Rezaie alleges that he and his family have suffered emotional and financial harm as a result of their years of separation from his aging parents who have health issues. He explains that he is at risk if he visits them in Iran and points out the high cost of visiting them in Turkey. While the Court acknowledges the impact that the delay in processing the visa applications has had on Ghannad-Rezaie and his family, the hardships that he alleges do not materially distinguish his

14

circumstances from those of the countless other adult citizens hoping to bring their parents to the United States. See, e.g., Durrani v. Bitter, No. 24-11313-FDS, 2024 WL 4228927, at *5 (D. Mass. Sept. 18, 2024) ("Despite the unquestioned difficulty that family separation may have on a plaintiff, in general, concerns about separation from family are insufficient to weigh in favor of the plaintiff because there are many others facing similar circumstances." (cleaned up)). The third and fifth TRAC factors thus weigh in Ghannad-Rezaie's favor. See Celebi, __ F. Supp. 3d at __ [2024 WL 3744654, at *4-5] (finding "limited support" for the plaintiff in these factors where "he ha[d] not alleged any facts that persuade[d] the Court that his interests [were] greater than those of any other asylee waiting to be processed"); V.U.C., 557 F. Supp. 3d at 223 (explaining that "while plaintiffs' welfare interests [were] weighty," they were "no more so than those of all U-visa petitioners awaiting waitlist adjudication").

TRAC factor four requires consideration of "the effect of expediting delayed action on agency activities of a higher or competing priority." 750 F.2d 70 at 80. The Court has no information about this factor. Finally, the complaint contains no factual allegations that plausibly suggest bad faith or impropriety on the DOS's part (TRAC factor six).

In sum, Ghannad-Rezaie has not plausibly alleged that he has experienced an unreasonable delay in the processing of his parents'

visa applications. For this reason, the Court dismisses Ghannad-Rezaie's claims under the APA and the MVA (Counts I and II).

### III. Due Process Claim (Count III)

Finally, Ghannad-Rezaie alleges that the DOS's purportedly unreasonable delay in processing his parents' visa applications violates his Fifth Amendment right to substantive and procedural due process. He asserts that he has a constitutionally protected interest in family unity and in the adjudication of his parents' visa applications.

The Supreme Court's recent decision in Muñoz forecloses this due process claim. The Court in Muñoz held that a U.S. citizen could not maintain a substantive due process challenge to a consular officer's denial of her husband's visa application because she did "not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." 602 U.S. at 909. Similarly, the Court rejected the notion that the U.S. citizen could allege that the denial of her husband's visa application violated her procedural due process rights. See id. at 916-19. Ghannad-Rezaie's due process claim (Count III) is therefore dismissed.

**ORDER**

For the reasons stated above, the Court **ALLOWS** the DOS's motion to dismiss (Dkt. 9).

SO ORDERED.

                                        /s/ PATTI B. SARIS
                                        Hon. Patti B. Saris
                                        United States District Judge